**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ALEXIS L. W.,

                               Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.

No. 5:24-CV-01131
(DNH/PJE)

---

**APPEARANCES:**

Olinsky Law Group
250 South Clinton Street, Suite 210
Syracuse, New York 13202
Attorneys for plaintiff

Social Security Administration
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for defendant

**OF COUNSEL:**

HOWARD D. OLINSKY, ESQ.

GEOFFREY M. PETERS, ESQ.
MOLLY CARTER, ESQ.

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Alexis L. W.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) seeking review of a decision by the Commissioner of the Social Security

Administration ("the Commissioner") denying her application for supplemental security

---

[1] This matter was referred to the undersigned for Report-Recommendation and in accordance with General Order 18 and N.D.N.Y. L.R. 72.3(e).
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

income ("SSI") benefits for lack of disability.  *See* Dkt. No. 1.  Plaintiff moves for the Commissioner's decision to be vacated and remanded for further proceedings.  *See* Dkt. No. 14.  The Commissioner moves for the decision to be affirmed.  *See* Dkt. No. 18.[3] Plaintiff filed a reply.  *See* Dkt. No. 21. For the following reasons, it is recommended that plaintiff's cross-motion be granted and the Commissioner's cross-motion be denied.

## I.  **Background**

On September 10, 2021, plaintiff filed Title II and Title XVIII applications for SSI benefits, alleging a disability onset date of July 28, 2021.  *See* T. at 259-62[4] (Dkt. No. 8-5).[5]  On December 21, 2021, the Social Security Administration ("SSA") denied plaintiff's claim.  *See id*. at 155-166 (Dkt. No. 8-4).  Plaintiff sought reconsideration, which the SSA denied on May 23, 2022.  *See id.* at 167-179 (Dkt. No. 8-4).  Plaintiff appealed and requested a hearing.  *See id*. at 182-84 (Dkt. No. 8-4).  On November 7, 2023, Administrative Law Judge ("ALJ") Bruce Fein held a hearing.  *See id*. at 44-75 (Dkt. No. 8-2).  On December 6, 2023, the ALJ issued an unfavorable decision.  *See id*. at 20-43 (Dkt. No. 8-2).  On August 20, 2024, the Appeals Council affirmed the ALJ's determination, and the decision became final.  *See id*. at 1-6 (Dkt. No. 8-2).  Plaintiff timely commenced this action on September 17, 2024.  *See* Dkt. No. 1.

## II.  **Legal Standards**

### A.  **Standard of Review**

---

[3] This matter has been treated in accordance with General Order 18.  Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgement on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

[4] "T." followed by a number refers to the pages of the administrative transcript.  *See* Dkt. No. 8.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page.  Citations to the parties' briefs refers to the pagination generated by the Court's electronic filing and case management program, located at the header of each page.

[5] Due to the voluminous nature and the separately-docketed parts of the administrative transcript, in addition to the record citation, the undersigned includes the docket cite for factual citations.

"In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled." *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4217371, at *1 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted,* No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (citing 42 U.S.C. §§ 405(g), 1388(c)(3)); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). "Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987)); *see also Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "Substantial evidence is 'more than a mere scintilla,' meaning that in the record one can find 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971))). "The substantial evidence standard is a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Id.* (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)) (internal quotations marks omitted). "Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence." *Id.* (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986)). "However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained 'even where substantial evidence may support the plaintiff's

position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" *Id*. (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

## B. **Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  *Id.* § 423(d)(1)(A).  "A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience."  *Joseph J. B.*, 2024 WL 4217371, at *2 (citing 42 U.S.C. § 423(d)(2)(A)).  "Such an impairment must be supported by 'medically acceptable clinical and laboratory diagnostic techniques.'"  *Id.* (citing 42 U.S.C. § 423(d)(3)).  "Additionally, the severity of the impairment is 'based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience.'"  *Id.* (quoting *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983))).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . .

*Berry*, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Joseph J. B.*, 2024 WL 4217371, at *2 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003)). "The plaintiff bears the initial burden of proof to establish each of the first four steps." *Id.* (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467)). "If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere." *Id.* (citing *DeChirico*, 134 F.3d at 1180 (citing *Berry*, 675 F.2d at 467)).

### III.  The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had "not engaged in substantial gainful activity since August 18, 2021, the application date." T. at 25 (Dkt. No. 8-2). At step two, the ALJ determined that plaintiff "has the following severe impairments: degenerative disc disease of the cervical spine,

degenerative disc disease of the lumbar spine, headaches, fibromyalgia, posttraumatic stress disorder, anxiety disorder, and depressive disorder." *Id*. (Dkt. No. 8-2). At step three, the ALJ determined that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. at 27 (Dkt. No. 8-2).

Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 416.967(a) except perform all postural limitations on an occasional basis except no climbing ropes, ladders, or scaffolds. She should avoid concentrated exposure to unprotected heights, hazardous machinery, extreme cold, and pulmonary irritants such as fumes, odors, gases, dust, and poorly ventilated areas.
>
> The claimant's work is limited to simple, routine, and repetitive tasks. The claimant can have occasional interaction with co-workers and supervisors, and no more than incidental contact with the public. I define incidental as more than never and less than occasional, simply the job should not involve direct interaction with the public, but the claimant does not need to be isolated away from the public. She can work in a low stress job defined as having only occasional decision making, changes in the work setting, and judgment required on the job.

T. at 28 (Dkt. No. 8-2).[6] At step four, the ALJ determined that plaintiff "is unable to perform any past relevant work." *Id*. at 35 (Dkt. No. 8-2). At step five, the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the

---

[6] Sedentary work is defined as

> involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

claimant can perform." *Id*. (Dkt. No. 8-2).  The ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, since August 18, 2021, the date the application was filed." *Id*. at 36 (Dkt. No. 8-2).

## IV.  **Discussion**

### A.  **The Parties' Arguments**

Plaintiff argues that the ALJ's decision is "not supported by substantial evidence because the ALJ failed to properly evaluate the mental opinion evidence." Dkt. No. 14 at 9.  Plaintiff argues that the ALJ erred in finding "the moderate-to-marked aspect of [Dr. Noia's] opinion," as well as the opinions of Dr. Augustine and nurse practitioner ("NP") Fendrick, unsupported and "inconsistent with the mental status examinations found elsewhere in the record." *Id*. at 10-11.  Plaintiff asserts that for each of these medical opinions, the ALJ "mischaracterize[ed] the supporting evidence whilst simultaneously ignoring the all too important subjective factor inherent to the diagnosis and treatment of mental impairments." *Id*. at 11; *see* Dkt. No. 21 at 2.  In mischaracterizing the evidence, plaintiff claims that "the ALJ failed to consider the evidence as a whole" and cherry-picked the evidence to support his conclusions.  *Id*. at 14.  Regarding the consistency factor, plaintiff argues that the ALJ improperly compared Dr. Noia, Dr. Augustine, and NP Fendrick's opinions to "medical visits for physical issues unrelated to [her] mental impairments." *Id*. at 15.  Further, plaintiff argues that the ALJ failed to explain the "alleged inconsistency" between NP Fendrick's opinion and her activities of daily life ("ADL").  *Id*.; *see* Dkt. No. 21 at 2-3.

The Commissioner argues that the ALJ's determination was supported by substantial evidence.  *See generally* Dkt. No. 18.  The Commissioner claims that the ALJ

properly explained why Dr. Noia's limitation opinion and Dr. Augustine and NP Fendrick's opinions "were unsupported by those sources' own examination findings and not consistent with the record evidence." *Id*. at 5. The Commissioner states that the ALJ properly explained his conclusions and "detailed evidence" demonstrating that plaintiff's symptoms improved with treatment and medication and that she was able to perform ADL. *Id*. at 6.

### B. **Medical Opinions**

"For claims filed on or after March 27, 2017," an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ['PAMFs'], including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a) (internal citation omitted). Rather medical opinions and PAMF's are evaluated based on their "persuasiveness." *Id*. In evaluating the "persuasiveness" of a medical opinion or PAMF, an ALJ is to "consider" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors." *Id*. §§ 416.920c(a); 416.920c(c)(1)-(5). "However, in many cases, the ALJ only need 'explain' how the supportability and consistency factors were considered, as they are 'the most important factors.'" *Brian K. v. Comm'r of Soc. Sec.*, No. 5:24-CV-26 (CFH), 2025 WL 18718, at *4 (N.D.N.Y. Jan. 2, 2025) (quoting 20 C.F.R. § 416.920c(b)(2); *see also* 20 C.F.R. § 416.920c(b)(2)-(3) (stating that an ALJ "is not required to" explain the remaining factors unless the ALJ determines that "two or more medical opinions or [PAMFs] about the same issue are both equally well-supported [ ] and consistent with the record [ ] but are not exactly the same").

For the "supportability" prong, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or [PAMFs], the more persuasive the medical opinion(s) or [PAMFs] will be."  20 C.F.R. § 416.920c(c)(1); *see also Kathleen A. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1034 (LEK), 2022 WL 673824, at *4 (N.D.N.Y. Mar. 7, 2022) (quoting *Carmen M. v. Comm'r of the Soc. Sec.*, No. 20-CV-6532 (MJR), 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021)) (noting that "[t]he supportability analysis focuses on 'how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations'").  With regard to the "consistency" prong, "[t]he more consistent a medical opinion(s) or [PAMFs] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. § 416.920c(c)(2); *see also Kathleen A.*, 2022 WL 673824, at *5 (first quoting 20 C.F.R. § 404.1520c(c)(2); then citing *Galo G. v. Comm'r of the Soc. Sec.*, No. 20-CV-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021)) ("In the consistency analysis, an ALJ must look outside the medical opinion itself to 'evidence from other medical sources and nonmedical sources in the claim,' and will find the medical opinion more persuasive the more consistent it is with these external sources.").

"ALJs are not required to state on the record every reason justifying a decision and [are] not required to discuss every single piece of evidence submitted."  *Brian K.*, 2025 WL 18718, at *4 (quoting *Ryan v. Comm'r of Soc. Sec.*, No. 21-2947-CV, 2022 WL 17933217 at *2 (2d Cir. Dec. 27, 2022) (summary order) (quoting *Brault*, 683 F.3d at 448)) (internal quotation marks omitted).  "However, they must articulate how persuasive they found the medical opinions and PAMFs."  *Id.* (citing 20 C.F.R. § 416.920c(b)).  "If the ALJ

fails adequately to 'explain the supportability or consistency factors,' or bases '[the] explanation upon a misreading of the record, remand is required.'" *Id*. (quoting *Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) (quoting *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020), *report and recommendation adopted* 2021 WL 134945 (Jan. 14, 2021))); *see also Jennifer A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-1167 (MAD), 2023 WL 8654215, at *4 (N.D.N.Y. Dec. 13, 2023) (quoting *Eric G. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1314 (MAD), 2023 WL 3004780, *4, n.1 (N.D.N.Y. Jan. 5, 2023)) ("The ALJ need not specifically write the terms 'supportability' or 'consistency' to meet the articulation requirements in 20 C.F.R. §§ 404.1520c and 416.920c; it is enough that the ALJ applied the proper legal analysis.")

## C. **Analysis**

### 1. **Dennis Noia, Ph.D**

#### a. **Medical Opinion**

Dr. Noia is a state consultative examiner who examined plaintiff on December 31, 2021, and April 27, 2022.  *See* T. at 782-86, 867-71 (Dkt. No. 8-7).[7]  On December 31, 2021, Dr. Noia diagnosed plaintiff with posttraumatic stress disorder ("PTSD"), unspecified depressive disorder, and unspecified anxiety disorder.  *See id*. at 785 (Dkt. No. 8-7).  Dr. Noia noted that plaintiff began weekly mental health treatment in 2018 and was prescribed three medications to treat these conditions.  *See id*. at 782 (Dkt. No. 8-7). Plaintiff's level of functioning was recorded as:

---

[7] The ALJ notes that plaintiff Dr. Noia examined plaintiff on May 12, 2022.  T. at 30 (citing Exhibit B20F) (Dkt. No. 8-2).  Yet, Exhibit B20F is a letter dated May 12, 2022, confirming plaintiff's identification and attaching a copy of the April 27, 2022, examination report.  *See* T. at 872-77 (Dkt. No. 8-7).

She has difficulty falling asleep and usually wakes up four or more times at night. Her appetite is normal. She endorses symptoms of depression including dysphoric mood, fatigue and loss of energy, crying, feelings of guilt, loss of interest, irritability, low self-esteem, and diminished sense of pleasure. She denies any suicidal or homicidal ideation, intent, or plan in the past 30 days. She endorses excessive apprehensiveness and worry. She was physically abused as a child by her parents and then in an abusive marriage and other abusive relationships. As a result, she experiences flashbacks, nightmares, intrusive thoughts, hyperstartle responses, hypervigilant, has anger outbursts, feels detached from others, and is avoidant of certain situations. She experiences panic attacks one to two times per week, and symptoms include heart palpitations, sweating, occasional trembling, and difficulty breathing.

*Id.* at 782-83 (Dkt. No. 8-7). Dr. Noia observed plaintiff's mood and affect as anxious. *See id.* at 783 (Dkt. No. 8-7). Dr. Noia opined that plaintiff had "[m]oderate to marked limitations regulating emotions, controlling behavior, and maintaining well-being." *Id.* at 784-85 (Dkt. No. 8-7). Dr. Noia concluded that "[t]he results of the examination are consistent with psychiatric problems, and these may at times significantly interfere with her ability to function on a daily basis." *Id.* at 785 (Dkt. No. 8-7).

On April 27, 2022, Dr. Noia diagnosed plaintiff with PTSD with panic attacks, unspecified depressive disorder, and unspecified anxiety disorder. T. at 870 (Dkt. No. 8-7). Dr. Noia noted plaintiff was still undergoing weekly mental health treatment and prescribed three medications. *See id.* at 867 (Dkt. No. 8-7). Dr. Noia noted the following about plaintiff's level of functioning:

She usually wakes up five to six times at night. Her appetite has decreased with a 15 [pound] weight loss in the past two weeks. She endorses symptoms of depression and anxiety including dysphoric mood, fatigue and loss of energy, crying, feelings of quilt, loss of interest, irritability, diminished self-esteem, diminished sense of pleasure, and excessive apprehensiveness and worry. She denies any suicidal or homicidal ideation, intent, or plan in the past 30 days. She states that she was sexually abused by her father from ages 3 to 5 and physically abused by her mother and brother ages 3 to 12. There was also emotional abuse by her ex. She experiences flashbacks, nightmares, intrusive thoughts,

> hyperstartle responses, hypervigilant, and has anger outbursts. She states that she also experiences panic attacks about three times per week, and when they occur, she has heart palpitations, experiences trembling, occasional nausea, dizziness, breathing difficulties, and fear of losing control.

*Id*. at 867-68 (Dkt. No. 8-7). Her affect and mood were s "slightly tearful, depressed and anxious" and "dysthymic and anxious." *Id*. at 868-69 (Dkt. No. 8-7). Dr. Noia opined that plaintiff had "[m]oderate to marked limitations regulating emotions, controlling behavior, and maintaining well-being." *Id*. at 870 (Dkt. No. 8-7). Dr. Noia concluded that "[t]he results of the examination appear to be consistent with psychiatric problems, and this may at times significantly interfere with the claimant's ability to function on a daily basis." *Id*. (Dkt. No. 8-7).

The ALJ determined that Dr. Noia's opinion that plaintiff "might have upwards of marked limitations in her ability to regulate her emotions, control her behavior, and maintain well-being" was unpersuasive. T. at 30-31 (Dkt. No. 8-2). The ALJ explained that

> significant limitations in these areas are not well supported by Dr. Noia's own mental status examination findings, considering that these findings showed that the claimant was cooperative with adequate manner of relating, social skills, and overall presentation, normal motor behavior, appropriate affect, good insight, and good judgment . . . While Dr. Noia indicated that the claimant had changes in her mood and affect, which support the existence of 'severe' mental impairments, they do not support marked mental limitations. I also find this portion of Dr. Noia's opinion inconsistent with the mental status examination findings in record.

T. at 30-31 (citing T. at 435, 462, 479, 488, 508, 519, 527, 557, 649, 652, 692, 705, 714, 745, 764, 847-48, 887, 897, 904, 913, 924, 937, 1061, 1158, 1262) (Dkt. Nos. 8-2, 8-7, 8-8).

b. **Supportability and Consistency**

The undersigned concludes that there are multiple errors in the ALJ's analysis of Dr. Noia's medical opinion warranting remand.   As an initial matter, the ALJ mischaracterizes Dr. Noia's opinion addressing plaintiff's ability to control her emotions. The ALJ provides that "Dr. Noia stated that the claimant *might* have upwards of marked limitations in her ability to regulate her emotions, control her behavior, and maintain well-being."  T. at 30 (citing T. at 784, 870) (Dkt. Nos. 8-2, 8-7) (emphasis added).  However, Dr. Noia's opinion was definitive in concluding that plaintiff suffered from "[m]oderate to marked limitations regulating emotions, controlling behavior, and maintaining well-being." *Id*. at 784-85, 870 (Dkt. No. 8-7).  The ALJ's rationale in prefacing Dr. Noia's opinion as "might have" when Dr. Noia's opinion on plaintiff's degree of limitation is not clear from the decision.  *Compare* T. at 30 (Dkt. No. 8-2), *with* T. at 784-85, 870) (Dkt. No. 8-7).

Second, the ALJ concluded that Dr. Noia's opinion that plaintiff had "significant limitations" in her "ability to regulate her emotions, control her behavior, and maintain well-being" is "not well supported by Dr. Noia's own mental status examination findings, considering that these findings showed that the claimant was cooperative with adequate manner of relating, social skills, and overall presentation, normal motor behavior, appropriate affect, good insight, and good judgment."  T. at 30 (citing T. at 783-84, 869-70) (Dkt. Nos. 8-2, 8-7).[8]  The ALJ correctly cites those parts of Dr. Noia's opinion.  *See id*.  However, Dr. Noia's December 2021 examination report also states that plaintiff suffered from "symptoms of depression including dysphoric mood, fatigue and loss of energy, crying, feelings of guilt, loss of interest, irritability, low self-esteem, and diminished

---

[8] The undersigned notes that the ALJ's decision cites "Exhibit[] B14F, pages 3-4."  T. at 30 (Dkt No. 8-2). Exhibit B14F is a state consultative examiner's report from Elke Lorensen, M.D.  *See* T. at 788-91 (Dkt. No. 8-7).  It is apparent from the remainder of the ALJ's decision that this is a scrivener's error and the ALJ was intending to refer to Exhibit B13F, pages 3-4.

sense of pleasure"; "excessive apprehensiveness and worry"; "flashbacks, nightmares, intrusive thoughts, hyperstartle responses, hypervigilant[ce], . . . anger outbursts"; detachment from others; and avoidant behaviors.  T. at 782-83 (Dkt. No. 8-7).  Dr. Noia's December 2021 examination report also noted that plaintiff "experience[d] panic attacks one to two times per week, and symptoms include heart-palpitations, sweating, occasional trembling, and difficulty breathing."  *Id*. at 783 (Dkt. No. 8-7).  Dr. Noia's April 2022 examination report described plaintiff as having a decreased appetite "with a 15 [pound] weight loss in the past two weeks," as well as "endors[ing] symptoms of depression and anxiety including dysphoric mood, fatigue and loss of energy, crying, feelings of guilt, loss of interest, irritability, diminished self-esteem, diminished sense of pleasure, and excessive apprehensiveness and worry."  T. at 867-68 (Dkt. No. 8-7).  Dr. Noia's April 2022 examination report also stated that plaintiff "experience[d] flashbacks, nightmares, intrusive thoughts, hyperstartle responses, hypervigilant[ce], and has anger outbursts," in addition to suffering from "panic attacks about three times per week," that manifest as "heart palpitations, experiences trembling, occasional nausea, dizziness, breathing difficulties, and fear of losing control.  T. at 868 (Dkt. No. 8-7).

The ALJ did not discuss or reconcile this potentially-favorable evidence when he concluded that he was unpersuaded by Dr. Noia's opinion that plaintiff suffered from "marked mental limitations."  T. at 30-31 (Dkt. No. 802).  By not addressing this evidence, the ALJ is cherry-picking information from one source and applying it contradictorily.  *See Lawrence K. v. Comm'r of Soc. Sec.*, No. 5:23-CV-496 (DNH/CFH), 2024 WL 4133823, at *5 (N.D.N.Y. July 10, 2024), *report and recommendation adopted,* No. 5:23-CV-496, 2024 WL 3823486 (N.D.N.Y. Aug. 15, 2024) (quoting *Jackson v. Kijakazi*, 588 F. Supp. 3d

558, 585 (S.D.N.Y. 2022) (citing *Velasquez v. Kijakazi*, No. 19-CV-9303 (DF), 2021 WL 4392986, at *27 (S.D.N.Y. Sept. 24, 2021))) ("Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his [or her] . . . determination while ignoring other evidence to the contrary."); *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4217371, at *8 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted,* No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (quoting *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019)) ("The ALJ must not ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence, but [t]he Court will not reweigh the evidence that was before the ALJ.") (internal quotation marks omitted); *Brenda Lee B. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1403 (CFH), 2022 WL 1421821, at *4 (N.D.N.Y. May 4, 2022) (same).  Although the Commissioner argues that the "ALJ cited further evidence that was inconsistent with Dr. Noia's opinion of moderate-to-marked limitations in regulating emotions, controlling behavior, and maintaining wellbeing," this argument mirrors the ALJ's decision because it too does not address nor reconcile the potentially-favorable findings in Dr. Noia's opinion.  Dkt. No. 18 at 9 (citing T. at 33 (Dkt. No. 8-2)).

Similarly, the ALJ's explanation for rejecting Dr. Noia's opinion is vague and conclusory.  The ALJ states, "[w]hile Dr. Noia indicated that the claimant had changes in her mood and affect, which support the existence of 'severe' mental impairments, they do not support marked mental limitations."  T. at 30 (Dkt. No. 8-2).  Yet, the ALJ does not explain the difference in what he is interpreting as a severe mental impairment versus a marked mental limitation.  The ALJ does not cite any authority defining either term.  The

ALJ does not appear to be using the terms interchangeably, and without any further explanation, judicial review of the rationale is frustrated.

Similarly, the ALJ does not reference any additional evidence to support the conclusion that plaintiff does not have a marked mental limitation, nor, as stated above, does he address the potentially-favorable evidence supporting plaintiff's having a marked mental limitation.  It appears that the ALJ is attempting to substitute his own judgment for that of "a competent medical opinion."  *Balaguer Perez v. Berryhill*, No. 17-CV-3045 (JMA), 2019 WL 1324949, at *5 (E.D.N.Y. Mar. 25, 2019) (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (*superseded in part on other grounds by regulation*)) ("[A]lthough the RFC determination is an issue reserved for the ALJ, an ALJ 'cannot arbitrarily substitute [her] own judgment for [a] competent medical opinion.'") (internal citation omitted)); *Jeffery M. v. Comm'r of Soc. Sec.*, No. 3:19-CV-435 (TJM), 2020 WL 3637646, at *10 (N.D.N.Y. July 6, 2020) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983))) ("[A]n ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.") (internal quotation marks omitted); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) (citation omitted) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").

As to the consistency factor, the ALJ concluded that Dr. Noia's opinion that plaintiff suffered from "marked limitations in her ability to regulate her emotions, control her behavior, and maintain well-being" was "inconsistent with the mental status examination

findings in the record." T. at 30 (Dkt. No. 8-2). In support of this conclusion, the ALJ cites many treatment records. *See id*. at 30-31 (citing T. at 435, 462, 479, 488, 508, 519, 527, 557, 649, 652, 692, 705, 714, 745, 764, 847-48, 887, 897, 904, 913, 924, 937, 1061, 1158, 1262) (Dkt. Nos. 8-7, 8-8). However, the ALJ does not explain how these records are inconsistent with Dr. Noia's opinion. Most of these records only discuss plaintiff's mental state in passing, as plaintiff was being examined for a variety of physical ailments unrelated to her mental health conditions, including treatment for her neck, ankle, left hip, low back, legs, ear, and face, as well as for headaches, a colonoscopy or panendoscopy, and radiculopathy radiating from her back to her legs. *See id*. at 433-35, 462, 477-79, 488, 506-508, 515-519, 522-527, 554-577, 688-692, 700-705, 710-714, 740-745, 761-764, 885-887, 895-97, 901-04, 908-13, 934-37, 1058-61, 1155-58 (Dkt. Nos. 8-7, 8-8). It does not appear that plaintiff's mental health was the focus or objective of these examinations, rather, the records note plaintiff's mental state during the examination itself. *See id*. (Dkt. Nos. 8-7, 8-8).

Similarly, although the records cited the ALJ cites appear to indicate that plaintiff had normal mood and affect during each examination, it is unclear why the cited records are inconsistent with Dr. Noia's opinion that plaintiff was markedly limited in her "ability to regulate her emotions, control her behavior, and maintain well-being" generally. *Id*. at 30 (Dkt. No. 8-2). The ALJ does not explain why these conclusions must be mutually exclusive. Additionally, the records at T. at 886 and 897 note that plaintiff continued to suffer from anxiety, insomnia, and depression, but do not discuss any details of these symptoms, such as the severity or frequency of these symptoms. *See id*. at 886, 897 (Dkt. No. 8-7). Further, the examination report at page 924 of the administrative transcript

does not reference plaintiff's mental health.  *See id*. at 924 (Dkt. No. 8-7).[9]  It is unclear how the records the ALJ cites are inconsistent with Dr. Noia's opinion when they only address plaintiff's mental state at specific points in time and do not provide any detail or analysis of her underlying conditions or symptomology.  *See Kathleen A.*, 2022 WL 673824, at *5 (first quoting 20 C.F.R. § 404.1520c(c)(2); then citing *Galo G.*, 2021 WL 5232722, at *4); *Mari Eli S.D. on behalf of S.Y.C.S. v. Comm'r of Soc. Sec.*, No. 5:23-CV-314 (BKS/CFH), 2024 WL 4204254, at *8 (N.D.N.Y. Aug. 19, 2024), *report and recommendation adopted,* No. 5:23-CV-314 (BKS/CFH), 2024 WL 4203972 (N.D.N.Y. Sept. 16, 2024) (citing 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4)) ("[T]he ALJ did not further elaborate and, thus, did not sufficiently explain the consistency of Dr. Simionescu's opinion with the record as a whole."); *Serrano v. Colvin*, No. 12-CV-7485 (PGG/JLC), 2014 WL 197677, at *17 (S.D.N.Y. Jan. 17, 2014) ("This bare and conclusory analysis constituted error.").

### 2.  **Joseph Augustine, M.D.**

#### a.  **Medical Opinion**

Dr. Augustine is one of plaintiff's primary care physicians and has treated plaintiff since 2014.  *See* T. at 1346 (Dkt. No. 8-8).  On September 22, 2023, Dr. Augustine completed a medical source statement reflecting that plaintiff was diagnosed with PTSD and concluding that she was "physically unable to work due to limitations she has . . . [from] associated depression with PTSD."  T. at 1348, 1346 (Dkt. No. 8-8).

---

[9] The undersigned acknowledges that the other records the ALJ cites indicate that plaintiff sought treatment to have her mental health medications refilled.  *See* T. at 648-49, 847-48, 886, 1261-62.  During these treatment sessions, plaintiff self-reported that her symptoms generally decreased with medication, but that she continued to suffer from depression, irritability, low motivation, difficulty concentrating, and inconsistent sleep patterns.  *See* T. at 648-49, 847-48, 886, 1261-62 (Dkt. Nos. 8-7, 8-8).

The ALJ concluded that Dr. Augustine's opinion was not persuasive "because the significant physical and mental limitations he outlined are not supported by any objective evidence on the actual face of the document of his assessment" and "not supported by treatment notes from his office." T. at 31 (Dkt. No 8-2). The ALJ explained that "the mental limitations Dr. Augustine identified are inconsistent with his mental status evaluation of the claimant from May 2023, which showed that the claimant's attitude was cooperative and appropriate without any anxiety, depression, or agitation, and speech was clear and appropriate for her age" and "inconsistent with the other mental status evaluations in record." T. at 31 (citing T. at 435, 462, 479, 488, 508, 519, 527, 557, 649, 652, 692, 705, 714, 745, 764, 783-84, 847-48, 868-69, 874-75, 887, 897, 904, 913, 924, 937, 1158, 1262) (Dkt. Nos. 8-2, 8-7, 8-8).

### b. **Supportability and Consistency**

The undersigned concludes that the ALJ's supportability analysis of Dr. Augustine's opinion of plaintiff's mental limitations is unsupported by substantial evidence. *See* 20 C.F.R. § 416.920c(c)(1); *Kathleen A.*, 2022 WL 673824, at *4 (quoting *Carmen M.*, 2021 WL 5410550, at *4). The ALJ concluded that Dr. Augustine's opinion was not supported by his "treatment notes from his office." T. at 31 (Dkt. No. 8-2). Yet, the ALJ's analysis of Dr. Augustine's treatment records is limited to plaintiff's fibromyalgia and neuropathy. *See id*. (Dkt. No. 8-2). The ALJ's supportability analysis does not discuss nor reference Dr. Augustine's treatment records addressing plaintiff's mental limitations. *See id*. (Dkt. No. 8-2). It is unclear how the ALJ concluded that Dr. Augustine's opinion regarding plaintiff's mental condition is not supported by Dr. Augustine's treatment records when the ALJ does not address those records himself. *See Mari Eli S.D. on behalf of S.Y.C.S.*, 2024 WL

4204254, at *8 (citing 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4))); *Serrano*, 2014 WL 197677, at *17.

Concerning the ALJ's consistency analysis, the ALJ's decision suffers from errors similar to those in his analysis of Dr. Noia's opinion.  First, the ALJ mischaracterizes Dr. Augustine's May 2023 examination.  *See* T. at 21 (Dkt. No. 8-2).  The ALJ states that Dr. Augustine conducted a mental-health examination in May 2023, yet review of this record indicates that plaintiff sought treatment for facial swelling after having dental treatment and was diagnosed with a periapical abscess and unspecified amenia.  *See* T. at 1158 (Dkt. No. 8-8).  The ALJ correctly notes that this treatment record has a section labeled "Exam" under which Dr. Augustine states, "Psych: Mood/Affect: Attitude is cooperative and appropriate. No apparent anxiety, depression, or agitation.  Language/Thought: Speech is clear and appropriate for age."  T. at 1157-58 (Dkt. No. 8-8).  Yet, there is no indication what, if any, mental examination or testing was performed or the results thereof. *See id*. at 1155-59 (Dkt. No. 8-8).  Similarly, there is no discussion in this record of any of plaintiff's mental health diagnoses or limitations, despite the May 2023 treatment record also noting that plaintiff was prescribed medication to treat her mental health conditions. *See id*. at 1155 (Dkt. No. 8-8).  Like the records relating to Dr. Noia's opinion, it appears that Dr. Augustine was merely documenting plaintiff's mental condition at that moment in time, and during an appointment unrelated to her mental health.

Second, as with the ALJ's analysis of Dr. Noia's opinion and the May 2023 treatment record, most of the records to which the ALJ cites do not indicate that plaintiff sought a mental-health examination or that her mental health was examined at that time. Rather, plaintiff sought treatment for routine care, radiculopathy, headaches, ileus, and

conditions involving her neck, ankle, hip, back, leg, ear, and abdomen.  *See* T. at 433-35, 462, 477-79, 488, 506-08, 515-19, 522-27, 554-57, 688-92, 700-05, 710-14, 740-45, 761-64, 899-904, 908-13, 895-97, 922-924, 934-37 (Dkt. Nos. 8-7, 8-8).   These records appear to document plaintiff's mental status during the respective exams which, without more, does not necessarily demonstrate that plaintiff is without significant mental health symptoms.   *See Johnryan Stout v. Comm'r of Soc. Sec.*, No. 20-CV-01458 (DEP) (N.D.N.Y. July 2022) (concluding that the fact that claimant managed to be cooperative with healthcare providers does not contradict providers' opinions that claimant is severely limited in ability to interact with coworkers, supervisors, or the general public.) (citation omitted)); *see also Primo v. Berryhill*, No. 17-CIV-6875-LTS-HBP, 2019 WL 2453343, at *1 (S.D.N.Y. Feb. 19, 2019), *report and recommendation adopted sub nom. Primo v. Comm'r of Soc. Sec.*, No. 17 CV 6875-LTS-SLC, 2021 WL 1172248 (S.D.N.Y. Mar. 29, 2021) (noting that ALJs must recognize "the effects of a mental health issue may be different in a work setting than in a non-work setting"); *Flynn v. Comm'r of Soc. Sec. Adm.*, 729 F. App'x 119, 120 (2d Cir. 2018) (summary order) (finding the ALJ improperly substituted lay expertise when he discounted treating source opinions based on treatment notes showing the plaintiff was "well-groomed" and with "calm affect" at medical appointments),

Further, in analyzing the consistency of Dr. Augustine's opinion, the ALJ relies on Dr. Noia and Cayla Fendick, N.P.'s ("NP Fendick") underlying treatment records and clinical evaluations to invalidate Dr. Augustine's opinion. *See* T. at 31 (Dkt. No. 8-2).  Yet, the ALJ disregards the favorable evidence in Dr. Noia and NP Fendick's treatment records.  Dr. Noia and NP Fendick noted that plaintiff "struggl[ed] with continued mood

liability and depression," difficulty sleeping, difficulty concentrating, "moderate levels of anxiety," "dysphoric mood, fatigue and loss of energy, crying, feelings of guilt, loss of interest, irritability, low self-esteem," a "diminished sense of pleasure" and self-esteem, "excessive apprehensiveness and worry," "flashbacks, nightmares, intrusive thoughts, hyperstartle responses, hypervigilant, [] anger outbursts, feel[ing] detached from others, and is avoidant of certain situations."  T. at 649, 651-52, 782-83, 847, 867-68, 873-74, 1260-62 (Dkt. Nos. 8-7, 8-8).  These records also note that plaintiff suffered from panic attacks, one to three times per week, that manifested as "heart-palpitations, sweating, occasional trembling, and difficulty breathing."  T. at 783, 868, 874 (Dkt. No. 8-7).  The ALJ's failure to consider this favorable evidence when analyzing the consistency of Dr. Augustine's opinion amounts to impermissible cherry-picking.  *See Lawrence K.*, 2024 WL 4133823, at *5 (quoting *Jackson*, 588 F. Supp. 3d at 585 (citing *Velasquez*, 2021 WL 4392986, at *27)); *Joseph J. B.*, 2024 WL 4217371, at *8 (quoting *April B.*, 2019 WL 4736243, at *6); *Brenda Lee B.*, 2022 WL 1421821, at *4.

### c. **Cayla Fendick, N.P.**

#### a. **Medical Opinion**

NP Fendick is one of plaintiff's mental health treatment providers and has been treating plaintiff since 2018.  T. at 1355 (Dkt. No. 8-8).  In November 2023, NP Fendick completed a mental source statement indicating that plaintiff is diagnosed with PTSD, major depressive disorder, and borderline personality disorder for which she is prescribed monthly medication and receives monthly mental health counseling.  *See id*. at 1352 (Dkt. No. 8-8).  NP Fendick listed plaintiff symptoms as "[a]nhedonia or pervasive loss of interest in almost all activities"; decreased energy; feelings of guilt or worthlessness;

generalized persistent anxiety; mood disturbance; "somatization unexplained by organic disturbance"; difficulty thinking or concentrating; "[r]ecurrent and intrusive recollections of a traumatic experience, which are a source of marked distress"; emotional withdrawal or isolation; emotional liability; easy distractibility; "[m]emory impairment- short, immediate, or long term"; sleep disturbance; and "[r]ecurrent severe panic attacks manifested by a sudden and unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week."  *Id*. (Dkt. No. 8-8). NP Fendick opined that since starting treatment in 2018, plaintiff has seen "minimal progression [or] improvement in symptoms and functioning" and "is not able to regularly and effectively perform" the work-related tasks listed on the questionnaire "due to mental health diagnoses."  T. at 1353, 1355 (Dkt. No. 8-8).

The ALJ concluded that NP Fendick's opinion regarding plaintiff's work-related mental limitations was unpersuasive because NP Fendick's opinion was inconsistent "with the mental capacity indicated by the claimant's activities of daily living" and "the opinions of Dr. Noia."  T. at 31 (Dkt. No. 8-2).

### b. **Consistency**

Plaintiff argues that the "ALJ briefly alleged inconsistency between NP Fendrick's opinion and Plaintiff's activities of daily living, but went no further in explaining where the inconsistency occurred, or indeed identifying any activity alleged to be inconsistent."  Dkt. No. 14 at 15 (citing T. at 31 (Dkt. No. 8-2)).   In rejecting NP Fendick's opinion as inconsistent with plaintiff's ADL, the ALJ determined:

> The record shows that the claimant has maintained a broad range of daily activities that is consistent with the established residual functional capacity. Specifically, the claimant stated that she could attend to her personal needs, cook, clean, do laundry, go shopping, manage money, drive, and engage in

hobbies and leisure activities. She stated that she lives alone. The claimant also engages in childcare for her three children. In May 2023, counseling records noted an improvement in her activities of daily living.

T. at 34-35 (citing T. at 784, 789, 839, 864, 1245) (Dkt. Nos. 8-7, 8-8).

Yet, the ALJ did not explain how plaintiff's ADL were inconsistent with NP Fendick's mental limitation opinion or plaintiff's inability to effectively perform work-related tasks. "[W]hile an ALJ may properly consider these activities when assessing the intensity and persistence of symptoms . . . the ALJ here appeared to place disproportionate weight on [P]laintiff's activities of daily living, none of which equate to the ability to perform substantial gainful activity." *Alexandria S. v. Comm'r of Soc. Sec.*, No. 6:22-CV-20 (MAD/DJS), 2023 WL 2863323, at *4 (N.D.N.Y. Feb. 3, 2023), *report and recommendation adopted,* No. 6:22-CV-20 (MAD/DJS), 2023 WL 2583212 (N.D.N.Y. Mar. 21, 2023) (first citing *Tenesha G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1070 (DNH), 2022 WL 35998, at *7 (N.D.N.Y. Jan. 4, 2022); then quoting *David F. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-315 (SALM), 2021 WL 5937670, at *9 (D. Conn. Dec. 16, 2021) (quoting *Berg v. Colvin*, No. 3:14-CV-1042 (SALM), 2016 WL 53823, at *8 (D. Conn. Jan. 5, 2016))) (internal citation and quotation marks omitted); *see also Munoz v. Comm'r of Soc. Sec.*, No. 20-CV-2496 (KAM), 2021 WL 4264814, at *6 (E.D.N.Y. Sept. 20, 2021) (quoting *Bigler v. Comm'r of Soc. Sec.*, No. 19-CV-3568 (AMD), 2020 WL 5819901, at *5 (E.D.N.Y. Sept. 29, 2020) (quoting *Vasquez v. Barnhart*, No. 02-CV-6751, 2004 WL 725322, at *11 (E.D.N.Y. Mar. 2, 2004))) ("[A] finding that a claimant is capable of undertaking basic activities of daily life cannot stand in for a determination of whether that person is capable of maintaining employment, at least where there is no evidence that

the claimant engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job.") (internal quotation marks omitted).

The Second Circuit has "stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act." *Alexandria S.*, 2023 WL 2863323, at *4 (quoting *Balsamo*, 142 F.3d at 81 (quoting *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988))); *Moss v. Colvin*, No. 1:13-CV-731 (GHW/MHD), 2014 WL 4631884, at *33 (S.D.N.Y. Sept. 16, 2014) ("It is well-settled in the Second Circuit that the capacity to care for oneself does not, in itself, contradict a claim of disability as people should not be penalized for enduring the pain of their disability in order to care for themselves.") (internal citation and quotation marks omitted)).  As noted, "[t]here are critical differences between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job." *Id*. (quoting *David F.*, 2021 WL 5937670, at *9 (quoting *Moss*, 2014 WL 4631884, at *33)).  "[A]n ALJ should take into account whether any evidence of daily activities shows that the claimant engage[d] in any of these activities for sustained periods comparable to those required to hold . . . a job." *Id*. (quoting *Kelly W. v. Kijakazi*, No. 3:20-CV-948 (JCH), 2021 WL 4237190, at *10 (D. Conn. Sept. 17, 2021) (quoting *Balsamo*, 142 F.3d at 81)).

Here, the ALJ's discussion of plaintiff's ADL lists but does not analyze her ADL, including whether she can "engage[] in any of these activities for sustained periods comparable to those required to hold a . . . job." *Munoz*, 2021 WL 4264814, at *6 (quoting *Bigler*, 2020 WL 5819901, at *5 (quoting *Vasquez*, 2004 WL 725322, at *11)); *Alexandria S.*, 2023 WL 2863323, at *4 (quoting *Kelly W.*, 2021 WL 4237190, at *10 (quoting *Balsamo*, 142 F.3d at 81)).

Additionally, although the ability to perform childcare is a factor the ALJ may consider in determining a plaintiff's ability to work, "merely because Plaintiff is stated to care for her children and a relative, it does not necessarily follow that she is not disabled without an analysis of what that care entails and the manner in which it is provided." *Alexandria S.*, 2023 WL 2863323, at *5; *Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010) (summary order) (citing 20 C.F.R. § 404.1529(c)(3)(i)) (noting that ability to perform childcare is an ADL the ALJ can consider in determining a claimant's ability to work). Here, the ALJ provides no details regarding the nature and the extent of plaintiff's childcare duties. *See Harris v. Colvin*, 149 F. Supp. 3d 435, 444 (W.D.N.Y. 2016) (quoting SSR 96–8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996) ("The ALJ . . . failed to recognize the differences between being a parent, caring for one's children at home, and performing substantial gainful employment in the competitive workplace on a 'regular and continuing basis,' i.e., '8 hours a day, for 5 days a week, or an equivalent work schedule[]' . . . ."). Rather, the ALJ simply notes that plaintiff reported that she "engages in childcare for her three children." T. at 34-35 (Dkt. No. 8-2).

As plaintiff argues, the ALJ does not identify the alleged inconsistency between plaintiff's ADL and NP Fendick's opinion, and "simply listing activities does not rectify the error in failing to explain how those activities were inconsistent with the opinion evidence." Dkt. No. 21 at 2; *see* Dkt. No. 14 at 15. Further, "[t]here is nothing in either the Act or the Commissioner's regulations and policy rulings to suggest that individuals who engage in child-rearing activities are disqualified from being found disabled." *Harris*, 149 F. Supp. 3d at 445; *Alexandria S.*, 2023 WL 2863323, at *5 ("[M]erely because Plaintiff is stated to care for her children and a relative it does not necessarily follow that she is not disabled

without an analysis of what that care entails and the manner in which it is provided."). Rather, "[t]he ALJ must build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review."  *Id*. at *5 (quoting *Pamela P. v. Saul*, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *4 (N.D.N.Y. May 20, 2020)) (internal quotation marks omitted).  Without this additional analysis, it is unclear what, if any, inconsistency exists, frustrating judicial review.  *See* Cartwright v. Comm'r of Soc. Sec., No. 19-CV-6543 (FPG), 2020 WL 3263447, at *3 (W.D.N.Y. June 17, 2020) (quoting *Arias v. Astrue*, No. 11-CV-1614, 2012 WL 6705873, at *2 (S.D.N.Y. Dec. 21, 2012)) ("[W]here there is conflicting evidence, the ALJ must acknowledge the conflict and explain why 'the conflicting [evidence] is being disregarded.' Because the ALJ did not do so, further administrative proceedings are necessary.").

The ALJ's consideration of plaintiff's ADL is not harmless error because "[p]art and parcel to the RFC determination is the ALJ's review of the medical opinion evidence and the credibility of Plaintiff."  *Alexandria S.*, 2023 WL 2863323, at *5 (N.D.N.Y. Feb. 3, 2023) (quoting *Dumas v. Comm'r of Soc. Sec.*, No. 7:13-CV-1099 (GTS/TWD), 2015 WL 1403342, at *13); *Newton v. Berryhill*, No. 3:18-CV-1244 (MPS), 2019 WL 4686594, at *4 (D. Conn. Sept. 26, 2019) (finding that the plaintiff's ADL: self-care, attempting to "help out with his grandson," driving "his grandson to work a few times per week, prep[aring] light meals, sweep[ing], and go[ing] on short walks" did not "constitute substantial evidence that his functional abilities are in excess of those alleged, and in any event do not support specific findings that he can" complete light work).

Therefore, the undersigned concludes that (1) the ALJ failed to properly evaluate the medical opinion evidence, (2) the ALJ improperly relied on plaintiff's ADL, and (3) the

ALJ's physical RFC determination is not supported by substantial evidence.  *See Joseph J. B.*, 2024 WL 4217371, at *1, 8 (first citing *Johnson*, 817 F.2d at 985-86, then citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)); *Alexandria S.*, 2023 WL 2863323, at *4; *Lawrence K.*, 2024 WL 4133823, at *5 (quoting *Jackson*, 588 F. Supp. at 585 (citing *Velasquez*, 2021 WL 4392986, at *27)); *Balaguer Perez*, 2019 WL 1324949, at *5 (quoting *Balsamo*, 142 F.3d at 81); *Mari Eli S.D. on behalf of S.Y.C.S.*, 2024 WL 4204254, at *8 (citing 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4)).  It is recommended on remand, the ALJ reevaluate (1) the supportability and consistency factors as they relate to Dr. Noia's mental limitations opinion, and the opinions of Dr. Augustine and NP Fendick; and (2) plaintiff's ADL as it relates to NP Fendick's mental limitation opinion.  *See* 20 C.F.R. §§ 416.920c(c)(1), 416.920c(c)(2); *Kathleen A.*, 2022 WL 673824, at *5; *Balaguer Perez*, 2019 WL 1324949, at *5; *John K.*, 2025 WL 1248727, at *4, n.5.; *Angele J. W.*, 2024 WL 4204301, at *5; *Lozito v. Comm'r of Soc. Sec. Admin.*, No. 21-CV-5969 (JMW), 2025 WL 473978, at *15 (E.D.N.Y. Feb. 12, 2025), *amended in part,* No. 21-CV-5969 (JMW), 2025 WL 832501 (E.D.N.Y. Mar. 16, 2025) ("[T]he Court finds the ALJ's RFC determination resulted from a flawed evaluation of medical opinion evidence such that remand is warranted.") (internal quotation marks omitted); *Kathleen M. v. Comm'r of Soc. Sec.*, No. 8:20-CV-1040 (TWD), 2022 WL 92467, at *9 (N.D.N.Y. Jan. 10, 2022) (citing 20 C.F.R. § 404.1545(a)(3)) ("A flawed evaluation of medical opinion evidence also impacts the ALJ's assessment of a claimant's residual functional capacity.").

## V. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**RECOMMENDED**, that plaintiff's cross-motion (Dkt. No. 14) be **GRANTED**; and it is further

**RECOMMENDED**, that the Commissioner's cross-motion (Dkt. No. 18) be **DENIED**, and the Commissioner's decision be reversed and remanded for further proceedings; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

 **IT IS SO ORDERED**.

Pursuant to 28 U.S.C. §636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated:  January 12, 2026
        Albany, New York

_____
 Paul J. Evangelista
 U.S. Magistrate Judge